## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF
AMERICA,

*v.*

THOMAS LESTER HAZOURI,
JR.

      *Defendant.*

**Case No. 3:20-cr-119-TJC-MCR**

## SENTENCING MEMORANDUM
## AND REQUEST FOR DOWNWARD DEPARTURE

Defendant, Thomas L. Hazouri, Jr., files this memorandum to assist the Court in preparation for the sentencing scheduled for 3:00 p.m. on September 27, 2022.

On August 24, 2021, Mr. Hazouri entered a plea of guilty to distributing visual depictions involving the use of minors engaged in sexually explicit conduct in violation of 18 U.S.C. §2252(a)(2) and (b)(1). This Court accepted the plea the following day. [Doc. 62]. This Sentencing Memorandum will explain why a sentence at or near five years incarceration followed by supervised

release is "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C. § 3553(a).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

> *Koon v. United States*, 518 U.S. 81, 113 (1996).

## SENTENCING GUIDELINES

### The PSIR Calculation

The PSIR calculates a Total Offense Level of 34, which, with the calculated criminal history (CH I), results in an advisory Guidelines range of 151 to 188 months. The Supreme Court has held that the Guidelines are no longer mandatory or "the only consideration" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Booker*, 543 U.S. 220 (2005). The Guidelines range can be "a starting point," though the Court may not presume that [it] is reasonable. [The Court] must make an individualized assessment based on the facts presented. *Id*. at 50; see *Nelson v. United States*, 555 U.S. 350, 352 (2009).

The PSIR Offense Level Computation, while consistent with the current sentencing scheme for offenses like Mr. Hazouri's, does not adequately account for technological changes in offense conduct or variations in offender culpability and sexual dangerousness. According to the United States Sentencing Commission's 2021 report *Federal Sentencing of Child Pornography: Non-Production Offenses*, the Commission itself has recognized since 2012 that the sentencing scheme used is "insufficient to distinguish between offenders with different degrees of culpability." *U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses in 2021* at 1.[1] The 2021 report points out that enhancements which were intended to target more serious and more culpable offenders now apply in most cases, which resulted in the average guideline minimum to increase from 98 months in 2005 to 136 months in 2019. *U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses in 2021* at 5.

> For example, in fiscal year 2019, over 95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12).

---

[1] Congress has not implemented any changes to the sentencing scheme.

*U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses in 2021* at 4.

Mr. Hazouri was assessed an additional two levels because the material involved a prepubescent minor or a minor under the age of 12 years old. He was assessed an additional two levels for knowingly engaging in distribution, though the reality is that modern file-sharing technology allows for distribution to be accomplished for legal purposes by the quick push of a button or simply making unlawful materials available for download by others. Mr. Hazouri was assessed the now ubiquitous two levels for using a computer or interactive computer service in committing the offense. Without these enhancements, his Guidelines range would fall to 78-97 months (Offense Level 28).

Mr. Hazouri was also assessed five additional levels because the offense involved 600 or more images.  Mr. Hazouri was found to have electronically possessed 142 images and 45 videos, not an unusually high number.  Each video, however, is counted as 75 images per the Guidelines resulting in the calculation for Guidelines purposes of 3,517 images. "In fiscal year 2019, non-production child pornography offenses involved a median number of 4,265 images, with some offenders possessing and distributing millions of images and videos." *U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses in 2021* at 4.

If videos and images were counted the same for Guidelines purposes, only three levels would be added to Mr. Hazouri's Guidelines. That reduction, when combined with the considerations listed above, would bring Mr. Hazouri's advisory range close to the five-year mandatory minimum, 63-78 months (Offense Level 26).

## CONSIDERATION OF § 3553(a) FACTORS

## Circumstances and Characteristics

Under 18 U.S.C. § 3553(a)(1), a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

### *Early life*

Mr. Hazouri was born April 26, 1980 at Memorial Hospital in Jacksonville to Tommy and Carol Hazouri. He is an only child. His father, a lifelong elected official, was a member of the Florida House of Representatives at the time of his son's birth. His mother was an elementary school teacher; teaching in Duval County schools for 43 years. Prior to high school, Mr. Hazouri attended Crown Point Elementary, Mandarin Middle School, and St. Joseph's Catholic schools. He mostly made As and Bs. He was an active child and played many sports including soccer, football and wrestling.

During his adolescent years, Mr. Hazouri began experimenting with the real demon in his life: controlled substances. His drug use began with marijuana and LSD.

Mr. Hazouri briefly attended Mandarin High School and Bishop Kenny High School. His grades were poor, particularly in math, so he and his family decided he should move to University Christian School in the 10th grade. He made better grades at University Christian and was on the wrestling team. Mr. Hazouri graduated high school from University Christian in 1998.

By the time Mr. Hazouri was 18 years old, he had used marijuana, LSD, cocaine, mushrooms, and ecstasy. His use was recreational through high school, but soon after became increasingly problematic.

Mr. Hazouri was admitted to a hospital for mental illness for the first time when he was 18; during that treatment he was diagnosed with depression. His struggle with mental illness is ongoing but has improved since his incarceration, presumably due to medication and his abstention from the use of controlled substances.

Mr. Hazouri attended Sante Fe College in Gainesville after high school. In 2000, he spent 30 days at Twelve Oaks Recover Center in Pensacola for drug

addiction to marijuana and cocaine. Within a month of discharge, he was back using a multitude of controlled substances when available to him: xanax, opioids, ecstasy, marijuana, cocaine, GHB.

### *The nature and circumstances of the offense*

In just over an hour on March 26, 2020, Mr. Hazouri uploaded four videos depicting minors engaging in sexually explicit conduct on the mobile messaging application Kik. In early April, 2020, law enforcement received a cyber tip report regarding the March 26, 2020 uploads. Though Kik only retains its files for 30 days, on July 7, 2020, law enforcement sought and received a search warrant for Kik and Google account information associated with Mr. Hazouri. Files referenced in the cyber tip were not present in the data later provided by Kik and Google, but other unlawful files were found. 142 illegal images and 45 illegal videos were found on Mr. Hazouri's electronic devices.

Mr. Hazouri's activities related to unlawful visual depictions of minors was not only limited with regard to the number of images and videos but limited in time. His involvement with the unlawful materials occurred between March 2020 and August 2020 (the time of his arrest).

Mr. Hazouri was arrested by the Jacksonville Sheriff's Office (JSO) for 25 counts of violating Florida Statute 827.071(5), related to possession of child pornography, on August 19, 2020. The Honorable Judge John Moran set bond at $1,003 per count. Mr. Hazouri was released from custody on the state charges after posting bond, only to be arrested by federal authorities for the same conduct two weeks later.

On August 26, 2020, the Duval County School Police transferred Mr. Hazouri's work-issued Lenovo laptop to JSO for forensic analysis. Nothing unlawful was found on the laptop.

At the time of the subsequent arrest on federal charges, Mr. Hazouri was found to be in possession of an iPhone 11, .10 grams of heroin, and various personal items including a journal. The iPhone was forensically analyzed by JSO and found to contain no child notable images or videos.

***History and characteristics of the defendant***

> ### A.    *Substance Abuse History*

No one disputes that the tragic and unfortunate dominating influence in Mr. Hazouri's life has been the abuse of controlled substances.  The extent and

level of the abuse was clearly beyond what Mr. Hazouri could control, notwithstanding support from family, counseling, and treatment programs.

Presentence Investigation Report, page 12, paragraph 65 provides charted details of this history and is shown below:

| Substance | Age at First Use | Age at Last Use | Frequency of Use |
|---|---|---|---|
| Marijuana | 14 | 40 (day of arrest) | Daily |
| LSD | 14 | 35 | Weekly |
| Alcohol | 15 | 40 (week of arrest) | Weekly |
| Powder Cocaine | 18 | 40 | Daily |
| Ecstasy | 18 | 22 | Weekly |
| Opiates | 20 | 35 | Daily |
| Heroin | 25 | 40 (day of arrest) | Daily |
| Benzodiazepines | 30 | 35 | Daily |
| Methamphetamines | 35 | 40 (day of arrest) | daily |

Now age 41, Mr. Hazouri's drug history reflects a pattern of abuse covering approximately two-thirds of his life. There is no method or reason as to which substances were abused at a given time, although the arrival of three particular substances began more recently at age 25. As the Presentence Investigation Report reflects on page 12, paragraph 66 (and as confirmed by Dr. Deitchman whose report is an exhibit to this memorandum), it can reasonably be stated that the sobriety associated with being in jail has been one of the best things that ever happened to Mr. Hazouri in his adult life.

It is difficult for one to relate to this level of addiction, much less one that was mostly hidden.  These concerns were promptly brought to the attention of the United States Court around the time of Mr. Hazouri's arrest by the United States Pretrial Services Department.  At Mr. Hazouri's first appearance, three reasons were provided as supporting a Risk of Non-Appearance:  (1) mental health history; (2) substance abuse history; and (3) substance abuse while on State bond.

Additionally, within the assessment of Danger Analysis, the Pretrial Services listed four considerations, two of which were: (2) substance abuse history; and (4) substance abuse while on State bond. (The other two were nature of the instant offense and mental health history.)

One could suggest when Mr. Hazouri was arrested by federal authorities that the presence of a vaping cigarette containing a small portion of heroin could constitute an aggravating circumstance.  To the contrary, counsel respectfully suggests that it manifests the incredible dependence Mr. Hazouri developed on controlled substances. He had been the focal point of intense media after his arrest by state authorities. Mr. Hazouri was a teacher of young students and the son of a well-known local public figure.  One would surmise that no intelligent human being would possibly be in the possession of an illegal controlled

substance while released pending trial.  The presence of the vaping material simply confirmed that Mr. Hazouri had no control over his substance abuse behavior.

There are several different counseling and abuse treatment programs in which Mr. Hazouri enrolled, and for which none can argue long term success in hindsight.  The list would include Twelve Oaks in Navarre, Florida in the spring of 2000; Ten Broeck Hospital in Jacksonville in 2000; and Hope Day facility in Pensacola in 2018.

Documentation of the history of the abuse confirms that the problem is neither new nor contrived.  One measure of confirming this is an analysis of Mr. Hazouri's record of arrests – none of which resulted in a criminal conviction – but all relate to illegal substances:

| Date of Arrest | Charge | Age at arrest |
|---|---|---|
| October 17, 2019 | Possession of heroin | 39 |
| September 11, 2017 | Marijuana | 37 |
| June 6, 2001 | Alcohol | 21 |
| May 9, 2000 | Cannabis | 20 |
| October 22, 1996 | Marijuana | 16 |

Presentence Investigation Report at p. 8-9

Mr. Hazouri's social relationships were consistent with the abuse outlined above in terms of their reflections of instability.  He moved to several different

residences over a 14-year period, from Gainesville, to Jacksonville, to St. Augustine, to Jacksonville, to Pensacola, then to Jacksonville. At one point he had purchased a home in Jacksonville Beach but has sold it since his arrest.

While his father was living, Mr. Hazouri spoke to his parents almost every day from the Baker County Jail. Since his father's death, he has spoken with his mother daily, recognizing that although he betrayed what his parents had done to raise him, he remains his mother's only child and feels obligated to do everything he can to keep her strong during these times.

In the context of recognition of wrongdoing and acceptance of responsibility, the best description of Mr. Hazouri's adolescent and adult life was that he lived a life which had to be "perfect" on the outside no matter what demons were assailing him. He led a private life of drug addiction and then child pornography, always knowing that if he were caught the public criticism of his family would be devastating.

### B.    *Self-help Issues*

In the Presentence Investigation Report (paragraph 69), there is reference to "[d]iscovery material [which] contains excerpts from what appears to be Mr. Hazouri's diary. In it, he lists things he hates about himself and things he wants

to change about himself.  Under the former and latter categories, respectively, [Mr. Hazouri] writes (among other things), 'I am addicted to marijuana' and 'I don't want to smoke weed every day.'" The booklet was within a backpack seized by federal authorities upon Mr. Hazouri's arrest.

There are other writings within the diary, some involving the use of pornography, that the United States will likely ask the Court to consider in aggravation.  Notwithstanding the questionable legality of seizing an arrested person's diary and immediately taking the liberty of examining the contents, we ask that the Court disregard the diary. Mr. Hazouri has accepted responsibility for his poor choices.  The diary is simply a self-acceptance of responsibility.  As is true of the content of every diary or journal, Mr. Hazouri made the writings with the expectation that no one else would see them. Further, his writings were made in self-hatred and despair. They reflect the anxiety and difficulties of a troubled person struggling with serious personal issues and wanting to remedy them.

### C.    *Mental Health History and Evaluation*

The available documentation would establish that by early 2020, Mr. Hazouri's life, outside the classroom, had collapsed.  Remarkably, he had the

ability to maintain an excellent teaching role, and others around him were unaware of what was occurring in his personal life.

Mr. Hazouri was diagnosed with depression in his teenage years. This precipitated an effort by his parents to have him provided mental health treatment at Baptist Hospital. As recently as 2015, he was diagnosed with borderline personality and prescribed various medications. It is confirmed that he experienced an unsuccessful suicide attempt in 2015, when he tried to hang himself. At this point he was a daily drug abuser and, as mentioned above, even the Pretrial Services Report upon his federal arrest reflected the risks of mental health history in both assessments of non-appearance and danger.

### i.  Psychosexual Evaluation

Dr. George Deitchman conducted a psychosexual evaluation of Mr. Hazouri in connection with this case. Dr. Deitchman's curriculum vitae and psychosexual evaluation are attached as Exhibits A and B. During the evaluation, Dr. Deitchman received a detailed history of Mr. Hazouri's background and upbringing, his offense conduct, his mental illness, and his lengthy and intense history of drug use. Dr. Deitchman highlighted that upon Mr. Hazouri's return to Jacksonville in 2018 to be near his father during his father's decline in health, Mr. Hazouri began to again use heroin and

14

methamphetamine. His methamphetamine use increased after the onset of the pandemic in March 2020. Methamphetamine is known to cause compulsive or risky sexual behavior, which is precisely what occurred with Mr. Hazouri. Mr. Hazouri reported to Dr. Deitchman that the use of methamphetamine "increased his sexual curiosity and being willing to look at other fringe and illegal sexual materials." Certainly, the early stages of the pandemic provided Mr. Hazouri with a life experience of working in solitude and at a computer almost constantly.  This began with the commencement of Spring Break (Duval County Public School System), after which schools were closed until long after Mr. Hazouri's arrest.  (See Exhibit C.)  This combined with methamphetamine use prompted an increased use of pornography and led him to look at child pornography.

Dr. Deitchman found that Mr. Hazouri is sexually attracted to adult, pubescent and older prepubescent females. The facilitation factors for his sexual interest in older prepubescent females are his heavy drug use and thinking he can use child pornography without being caught. Both facilitation factors can safely be put aside going forward, as Mr. Hazouri will be required while on supervised release to abstain from controlled substances and, of course, he is now acutely aware that he cannot use child pornography consequence-free.

Mr. Hazouri does not show significant signs of being at risk to re-offend, according to Dr. Deitchman, especially with psychosexual treatment following his release from incarceration. Despite the reality that sexual offender registration will be mandatory, Dr. Deitchman's opinion is that it would not otherwise be recommended due to the lack of any hands-on offense involving minors.[2]

### D.    *Publicity Analysis*

After Mr. Hazouri's arrest on the state charges, he dutifully submitted his letter of resignation from the Duval County School System on September 22, 2020, which was effective September 25, 2020. The resignation letter is attached as Exhibit D and includes an acceptance of conditions as part of his departure from the Duval County School System.

There were countless media accounts of Mr. Hazouri's arrest and plea, both as to the state and federal charges. It would be absurd to argue that this was not devastating to his parents, especially about their only child. His mother was a career public school teacher. Among many other accomplishments, his

---

[2] The Jacksonville Sheriff's Office investigated the possibility of any hands-on offenses by Mr. Hazouri. They found no evidence of such conduct. Further, counsel notes that considering Mr. Hazouri's well-known last name, his former career as a schoolteacher, and the publicity this case received, discovery of a hands-on offense would have been inevitable had one occurred.

father served on and chaired the Duval County School Board.  Mr. Hazouri was a teacher in the Duval County Public School System.  The entire series of events demonstrated a betrayal of his parents, the Duval County School System, the parents of all the children he taught, and especially these school children.

On the other hand, however, the massive attention given to the issue was an immediate catalyst to law enforcement to ensure that there were no instances of any physical abuse of any child either in the Duval County Public Schools or elsewhere.  There was certainly no better vehicle assisting law enforcement than the publicity making known what Mr. Hazouri had been arrested for, and allowing countless avenues of communication should anyone have a complaint of such misbehavior.  To that extent the publicity was a blessing, providing Mr. Hazouri this protection; it eliminated accusations of physical or sexual abuse of any child.

### E.    *Acceptance of Responsibility*

As reflected in the Presentence Investigation Report (paragraphs 32 and 33), Mr. Hazouri accepted responsibility for his misconduct.  Additionally, counsel would represent to the Court that, at the deadline for counsel to file any pretrial motions, counsel had prepared a detailed motion to suppress the evidence seized in this matter, predicated upon the staleness of the information

used in the affidavit to seek the search warrant.  Counsel does not here argue the validity of the position, but simply highlights the fact that Mr. Hazouri determined to proceed with the entry of a guilty plea and not litigate pretrial issues.

To the best of counsel's knowledge, there has not been a single disciplinary report or action against Mr. Hazouri since he was taken into custody by federal authorities September 3, 2020.  This constitutes a discipline-free record for someone in custody for over two years.  He has been detained continuously at the Baker County Jail.

Mr. Hazouri has never complained to any person that he has been treated unfairly, excessively or inappropriately throughout these entire proceedings.

### F.    Character

Notwithstanding all of the above, by every account Mr. Hazouri was a good person, talented and committed to helping others.  The following are excerpted from letters (Exhibit E) written on behalf of Mr. Hazouri, and which attest to a host of positive characteristics which suggest that Mr. Hazouri was two persons: one being devastated by substance abuse, the other an outstanding

teacher and friend, many of whom depended upon him.  Included as excerpts

from those letters are the following pertinent comments regarding his character:

> … He was not only my daughter's third grade teacher, but also a friend.  My daughter's (Piper Austin) father died during the summer between her second and third grade from brain cancer.  After his death, Piper started third grade and Tommy was her teacher.
> …
> He made school fun.  Piper loved having him as a teacher as he reminded her of her father.  He was very supportive of what she was going through.  He would attend her soccer games, basketball games and surf contests in a show of support.
> …
> In middle school he was her soccer coach at Kernan Middle School.  The team always had fun if they were winning or losing. Tommy kept things light and encouraged the girls to do their best.  He instilled pride in the girls and they did their best.  It was a great memory for Piper.
>
> *Comments of Kathy Austin*

> "…all of us will make mistakes.  The degree of the mistakes we make will vary, and for those that we love, we cannot allow those mistakes to be the reason we give up on them. …
>
> … I could not, cannot, and will not give up on someone that was there for me.
> …
> On December 5, 2015 when I was at my lowest point burying my only child, [he] was there to support me. … On that day I learned the heart of this young man.  That day changed my life and what I knew about this young man. …
>
> … He fell short of who he knows he was raised to be. … Since he cannot rewind (his life), he is now at a point where

he is willing to step up, take accountability, and will accept the consequences of his actions.

*Comments by Pearl M. Roziers, Retired Educator*


My name is Michael Allan Brown.  I'm a federal employee with the Department of Defense. I am a husband and father of two children.

…   Tommy was one of the first few friends I made after moving to Jacksonville from California that year, and 27 years later, he remains one of my closest and most trusted friends.
…

Post-graduation, I went into the Marine Corps while Tommy went to collect in Gainesville. … We remained in close contact … we grew closer …  Tommy quickly excelled in his career, and you could tell his profession was his calling. Tommy put everything into his career; his students as well as his parents loved him!  We couldn't go anywhere in Jax Beach without a student or parent saying hello, and Tommy would always stop what he was doing and have a conversation with them.
…

Tommy was the Best-Man at our wedding in 2007 and accompanied family during the births of both our children in 2008 and 2011. … Our children have always known him as "Uncle Tommy."
I am Carol Leeann Botzenhart, Tommy's cousin, his mother is my mother's sister.  I currently reside in Seminole, Florida. …  My husband is a 30-year veteran of the United States Coast Guard.

*Comments by Michael Allan Brown*


…  I was 18 when he was born and he grew up with my son, who was born four years after him.

20

…

…As he matured, we had many conversations about spirituality, philosophy and religion and we shared books on these subjects.  He cared so much about other people and wanted the world to be a better place.  I believe it is a big reason he decided to become a teacher, aside from the respect he held for his mother as a teacher. … In 2009, when my mother had brain surgery that resulted in a massive brain bleed, he traveled to Virginia to see her.  These visits greatly improved her ability to regain her memory and mobility.

*Comments of Carol Leeann  Botzenhart*


"…I know it may sound foolish for me to write because it seems contradictory, looking at what took place.
…
One of my favorite qualities about Tommy is his willingness to care for others.
…
… Assuredly I am deeply saddened at where we find ourselves today.  This behavior is out of character for Tommy and contrary to everything I know about him.  I pray that he gets the help that he needs, and you would be merciful in your sentencing.

*Comments of LaRonda Major*


Tommy Jr. had a reputation as an excellent teacher at both the Elementary and Middle School levels.  His dedication extended beyond the classroom as demonstrated by his decision to coach his school's soccer team.  I had the opportunity to see Tommy Jr. during his time as a teacher and he obviously took great pride in his role as a teacher.

*Comment of Lou Nussbaum, Guidance Counselor, Crown Point Elementary School*

Invested . . . students in his charge would feel welcomed, safe and excited to learn . . . lifelong learner dedicated to continuous growth . . . present, engaged and involved . . . time and energy . . . ability and passion . . . well-liked by his peers and students . . . encouraging. He was confused because he wasn't *doing anything* but being exactly who he was: reflective, willing, eager, kind, compassionate, sincere, magnanimous. He was supportive and encouraging. . . . The many trials of having aging parents . . . His own fears of his aging parents and about being a good son . . . but he also gave me a gift, acceptance (of her parents' death).

*Comments of Christine Schmidt, former instructional coach, Duval County School System*

As Tommy Jr. grew, I saw him become more & more like his mother, Carol. So kind & respectful to all our older family members. He always took time to sit and listen to them and talk about their interests. As an adult he followed his mother's footsteps and became a teacher. His students loved and respected him. He worked tirelessly to make his classroom special for them, even engaging his mother's help as she was his example to follow.

…

I have never been able to express my pride in the wonderful, loving, caring, gentle man he has grown into. It is a shame you have not been able to see this side of the man before you. Thank you so much for taking the time to read our heartfelt stories of Tommy Jr.

*Comments of Merry Adams Coalson, second cousin*

Piper Austin referred to in the foregoing remarks stated: … I work as a civil engineer at the Army Corps and have worked there over two years.

…

I have known Tommy Hazouri for over 16 years, he was my 3rd grade teacher. … I remember I was crying to my

> Grandparents telling them I didn't want Mr. Hazouri to die
> because I cared about him so much and I thought everyone I
> was close to would die since my dad had.
> …
>
> I remember one surf contest, I was discouraged and didn't
> want to participate in my next heat, but Mr. Hazouri gave
> me a pep talk and I went into the next heat and ended up
> advancing to the finals.  I was so proud of myself, and that
> wouldn't have happened if it wasn't for him.  He was such a
> positive influence in my life when I really needed it.
>
> *Comments of Piper Austin*

These are not letters from his father's supporters, but are letters from people who know Mr. Hazouri himself.  These people write from their firsthand knowledge of Mr. Hazouri.  More importantly they write knowing that the offense for which Mr. Hazouri stands convicted is, to many people, as offensive as any conduct possible, yet each shows a willingness to stand by Mr. Hazouri because of the person each knew and believed in.  As Ms. Roziers observed, "…[H]e fell short of who he knows he was raised to be. … Since he cannot rewind [his life], he is now at a point where he is willing to step up, take accountability, and will accept the consequences of his actions."

It is anticipated that Ms. Carol Hazouri, mother of Tom Hazouri, Jr., will speak for both parents at sentencing.

A sentence at or near the mandatory minimum five years of incarceration would be "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C. § 3553(a).

## Respect for the Law and Deterrence

Under § 3553(a)(2), the sentencing court must also consider

> the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In light of these facts, a significantly below Guidelines sentence would be "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C. § 3553(a).

## Available Sentences

Under § 3553(a)(3), the sentencing court must also consider "the kinds of sentences available." The available sentences are, of course, incarceration

followed by supervision, with whatever conditions the Court deems appropriate. Mr. Hazouri will also suffer the lifetime brand of sex offender.

## Sentencing Policy

Under § 3553(a)(5), the sentencing court should consider "any pertinent policy statement" issued by the Sentencing Commission (or otherwise in effect). The discussion herein of the 2021 report *Federal Sentencing of Child Pornography: Non-Production Offenses*, is relevant to the Court's consideration on this point.

## Avoiding Disparities

Under § 3553(a)(6), the sentencing court must also consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants.

In the present case, the 18 U.S.C. § 3553(a)(6) factor does not weigh against the imposition of a significantly below Guidelines sentence.

## Restitution

Under § 3553(a)(7), the sentencing court must also consider "the need to provide restitution to any victims of the offense." In the present case, the 18 U.S.C. § 3553(a)(7) factor does not weigh against the imposition of a significantly below Guidelines sentence of incarceration followed by supervised release.

## CONCLUSION

In light of these considerations, Defendant suggests that a sentence at or near the mandatory minimum incarceration sentence of five years would be "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C. § 3553(a).

DATED at Jacksonville, Florida this 22th day of September, 2022.

BEDELL, DITTMAR, DeVAULT, PILLANS
& COXE, Professional Association

By: s/Henry M. Coxe III
     Henry M. Coxe III
     Florida Bar No. 155193
     E-mail: hmc@bedellfirm.com
     Brian T. Coughlin
     Florida Bar No. 0713732
     Email: btc@bedellfirm.com
     Lidija I. Barauskas
     Florida Bar No. 118076
     Email: lib@bedellfirm.com
     101 East Adams Street
     Jacksonville, Florida 32202
     Telephone: (904) 353-0211

Counsel for Thomas Lester Hazouri, Jr.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on September 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to the following:

D. Rodney Brown
Assistant U.S. Attorney
rodney.brown@usdoj.gov


                                    s/Henry M. Coxe III
                                         Attorney